## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

PHILLIP DIGIOVANNI AND                          CIVIL ACTION

CONNIE DIGIOVANNI

VERSUS                                          NO. 13-334

ARTHUR LAWSON, ET AL.                           SECTION "B"(4)

<u>ORDER AND REASONS</u>

<u>Causes of Action</u>

Plaintiffs, Phillip Digiovanni and Connie Digiovanni, brought the instant suit against various government defendants under 42 U.S.C. § 1983 and state tort law for alleged police misconduct following the arrest of Phillip Digovanni.

Defendants represent two separate law enforcement agencies and municipalities: (1) "The Gretna Defendants"—Chief Arthur Lawson, the City of Gretna, Officer Phillip Sardino, and other unidentified Gretna officers; and (2) "The Jefferson Defendants"—Sheriff Newell Normand, Deputy Joshua Dennis, and unidentified Jefferson officers.[1]

For the following reasons, **IT IS ORDERED** that the Gretna Defendants' Motion for Summary Judgment (Rec. Doc. No. 30) is **GRANTED**, and Plaintiffs' claims against the Gretna Defendants are **DISMISSED WITH PREDJUDICE**. Plaintiffs maintain all causes of action alleged against the remaining Jefferson Defendants.

---

[1] Officer Daniel Banhardt, the Gretna City Police Department, and the Jefferson Parish Sheriff's Department were all previously named defendants but voluntarily dismissed from the action by Plaintiffs. (Rec. Doc. Nos. 19, 21).

**Facts of the Case**

Plaintiffs claim that on February 23, 2012 Phillip Digiovanni called the Gretna Police Department regarding threats made to him by a group of males whom he had a prior altercation with. According to Plaintiffs, the men had surrounded Phillip Digiovanni's car as he was driving, screamed obscenities and threats, and blocked him from passing down the street. In response, Phillip Digiovanni placed a gun on the dashboard of his vehicle. This caused the men to relinquish, and to let him pass.

Upon arriving home, Plaintiffs called the police. Officer Daniel Banhardt of the Gretna Police Department was dispatched to Plaintiffs' residence. He asked Phillip Digiovanni if he had a weapon. Phillip Digiovanni responded he did, and that there was a pistol inside his residence. Officer Banhardt then advised Phillip Digiovanni that he had an outstanding criminal attachment, and placed him under arrest. [2] A second officer, Phillip Sardino, then arrived on the scene.

Plaintiffs allege that sometime thereafter officers asked Connie Digiovanni to go into Plaintiffs' residence to retrieve the gun Phillip Digiovanni had informed the police about. She complied. A police officer followed her into the residence – without her

---

[2] Phillip Digiovanni claims he was physically disabled at the time of his arrest. His disability requires him to wear a permanent colostomy bag – a fact Plaintiffs' counsel mentions twenty-three separate times in his Opposition to the instant Motion for Summary Judgment. (Rec. Doc. No. 36).

permission – and retrieved the gun. The gun was then removed from the residence and retained by the officers.[3]

Phillip Digiovanni was then taken to the Jefferson Parish Correctional Center (JPCC), and was booked with Aggravated Assault and Disturbing the Peace. Sometime thereafter, Plaintiffs allege that Deputy Joshua Dennis of the Jefferson Parish Sherriff's Department began to taunt Phillip Digiovanni. Then, Dennis, along with other officers, beat Phillip Digiovanni causing injuries to his body.

Phillip Digiovanni was later released from jail on a $200.00 personal bond. Connie Digiovanni picked-up Phillip Digiovanni from the jail and transported him to Ochsner Medical Center where he received medical attention for injuries he claims to have received while at JPCC. The instant suit followed.

**Nature of Motion and Relief Sought**

The Gretna Defendants now seek summary judgment on all claims. Plaintiffs oppose. The Jefferson Defendants have filed nothing in relation to the pending motion, nor have they filed their own motion for summary judgment. Accordingly, the Court's review of the instant motion is limited to those claims concerning the Gretna Defendants.

**Analysis**

**I. Summary Judgment Standard**

Summary judgment is proper if the record evidence shows that there is no genuine issue as to any material fact, and that the

---

[3] Plaintiffs claim that to date they have never recovered the gun seized by police.

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable trier of fact to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he issue of material fact required by Rule 56 to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).

## II. Defenses

The Gretna Defendants claim several governmental immunities and categorical defenses from suit, which they argue require dismissal of Plaintiffs' claims. The Court will review each defense in turn.

### A. Municipal Liability

Local governing bodies cannot be held vicariously liable under 42 U.S.C. § 1983 purely for the actions of their employees. *Monell v.*

4

*Dep't of Soc. Services of City of New York*, 436 U.S. 658, 659 (1978). Rather, a local government may only be liable under § 1983 where an "official policy" of the governing body inflicts injury such that the government as an entity can fairly be held responsible. *Id.* at 694.

Where a government officer is sued in their official capacity the analysis is the same — since an official capacity suit is treated as a suit against the governing body. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999). Thus, where an officer is sued in their official capacity under a theory of vicarious liability for the actions of other employees, the officer may only be held liable where they had policymaking authority, and where they instituted a policy or practice that caused the eventual injury. *Id.; Flores v. Cameron Cnty., Tex.*, 92 F.3d 258, 263 (5th Cir. 1996).

In analyzing whether a policy actually exists, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993). Rather, a specific policy must be alleged for liability to attach. *Murray v. Town of Mansura*, 76 F. App'x 547, 549 (5th Cir. 2003). For example, in cases where an arresting police officer commits a constitutional violation, it does not necessarily follow that the city adopted a policy endorsing such acts for which the city can be held liable. *Colle* at 245.

Plaintiffs allege in their Complaint that Officer Sardino's actions were unlawful, and "are imputed to their employer . . . Chief

of Police, Arthur Lawson, whom supervised and employed [Sardino]." Complaint at ¶ 12 (Rec. Doc. No. 1). Plaintiffs however point to no policy – either in their Complaint or in their opposition to the instant motion — implemented by Chief Lawson that caused Plaintiffs' alleged injury. Accordingly, relief is not cognizable and Plaintiffs' claims against Chief Lawson for vicariously liability are dismissed. *Burge* at 468; *Colle* at 245.

Plaintiffs' claim that Chief Lawson failed to properly train officers similarly fails. Plaintiffs do not identify any specific lack of supervision or training that led to the alleged false arrest of Phillip Digiovanni.[4] Plaintiffs' claims against the City of Gretna

---

[4] Indeed, Phillip Digiovanni admitted in deposition that he would not be able to prove this claim at trial:

> Q. Paragraph 17 says, "Petitioners aver that defendant, Chief of Police, Arthur Lawson, failed to supervise and train defendants, Banhardt, Sardino, and ABC Gretna Officers, as described in this hereinabove matter."
>
> A. I never said that. I mean, no. What about it?
>
> Q. Do you know that to be a fact?
>
> A. No.
>
> Q. – – that they weren't trained?
>
> A. No.
>
> Q. Okay. Do you have an expert witness that is going to say they weren't trained.
>
> A. No.
>
> Q. "That this failure to train and supervise unleashed these Defendant/Officers upon Petitioner, to commit the offenses and torts heretofore described under color of law." Did the Gretna Police Officers do anything other than arrest you and bring you to jail?
>
> A. No.
>
> Q. And they didn't hit you or assault you?

additionally lack merit. Plaintiffs point to no policy or practice instituted by the City that can explain any of the officer's alleged misdeeds. *Colle* at 245.

**B. Individual Liability**

Since no municipal or official capacity liability exists, the Court next considers whether individual capacity suits can proceed against Chief Lawson or Officer Sardino. Upon review, all of Plaintiffs' individual capacity claims against the Gretna Defendants are easily dismissed.

First, Plaintiffs' claims that Phillip Digiovanni was unlawfully arrested lack merit. Phillip Digiovanni was arrested on an outstanding criminal attachment for contempt of court. *See* Defendants' Motion for Summary Judgment, Exhibit B, (Rec. Doc. No. 30-2). This more than gave Officer Sardino probable cause for the arrest, and can therefore not support a claim for violations of § 1983 nor a state tort claim for false arrest and imprisonment. *Allen v. Normand*, 2009 WL 2448253 *14 (E.D. La. Aug. 7, 2009); *Dyas v. Shreveport Police Dep't*, 136 So. 3d 897, 903 (La. Ct. App. 2014)("[I]f there was probable cause to arrest, then there is no false arrest cause of action."). Plaintiffs' counsel discusses at length the two other charges Phillip Digiovanni was arrested for.

---

A. No.

Defendants' Motion for Summary Judgment, Exhibit A, Deposition of PHILLIP DIGIOVANNI, pgs. 68-69 (Rec. Doc. No. 30-2).

These other offenses are ultimately irrelevant to the unlawful arrest analysis — since the arrest as a whole was supported by probable cause given the outstanding attachment. *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)("If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails.").

Second, to the extent that Phillip Digiovanni contends Greta officers assaulted him, this claim is belied by his deposition testimony. After describing the beating he claimed occurred at the Jefferson Parish Correctional Center (JPCC), Phillip Digiovanni was asked "you can't sit here today and tell me honestly that any Gretna policemen were involved in that; correct?" Defendants' Motion for Summary Judgment, Exhibit A, Deposition of PHILLIP DIGIOVANNI, p. 38 (Rec. Doc. No. 30-2). He responded "Correct." *Id*. When ask whether he was injured by the Gretna police officers who arrested him prior to his being taken to the JPCC, he responded "No, sir, I wasn't." *Id*. p. 40. Later, when asked "[d]id any Gretna Police officer assault you or batter you?" he responded "No." *Id*. at 58-59. Even disregarding these admissions, Plaintiffs have offered no evidence into the record to establish the involvement of any Gretna officer in his alleged assault at JPCC. Accordingly, judgment as a matter of law dismissing the assault claims as they relate to the Gretna defendants is appropriate.

Third, Plaintiffs' claims for unlawful search and seizure must fail. Connie Digiovanni's deposition testimony establishes that Officer Daniel Banhardt was the only officer to enter her home to retrieve the gun. Defendants' Motion for Summary Judgment, Exhibit A, Deposition of CONNIE DIGIOVANNI, p. 12-16 (Rec. Doc. No. 30-2). Thus, if an unconstitutional search did occur, Officer Banhardt is the only person that could be held individually liable. Officer Banhardt was dismissed from this action voluntarily by plaintiffs several months ago. *See* (Rec. Doc. No. 19, 21). Therefore, the Court need not conduct a complete analysis on whether the search could permit liability, since no potentially liable defendant remains in the action.

Lastly, Plaintiffs' state claims for conversion fail on the existing record.[5] Plaintiffs' gun was seized as part of the police investigation surrounding his altercation and arrest. Counsel for the Gretna Defendants represents that there is a procedure in place for retrieving property seized as evidence of a crime. Defendants' Motion for Summary Judgment, (Rec. Doc. No. 44 at 7-8). Plaintiffs reportedly only recently availed themselves of this procedure – filing a motion with the Gretna Mayor's Court on July 14, 2014.

---

[5] Technically speaking, no cause of action for conversion exists in the Louisiana Civil Code. *Gibbs v. Harris*, 799 So. 2d 665, 669-70 (La. Ct. App. 2001). However, "causes of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession, and enjoyment of movables are protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages. La. C.C. arts. 511, 515, 521, 524, 526, and 2315." *Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 721 So. 2d 853, 856 (La. 1998).

Plaintiffs have submitted nothing to contradict this fact, nor any independent evidence that they have made a formal request for the gun that was denied by the Gretna defendants. Accordingly, Plaintiffs cannot meet their burden to prove conversion at this time since they fail to demonstrate the Gretna Defendants unlawfully displaced Plaintiffs' property or were ever in unauthorized possession of the property.[6]

To the extent that Plaintiffs argue the conversion of their property additionally supports their federal § 1983 claim, that argument fails on the existing record. "The random and unauthorized intentional deprivation of property by a state actor does not constitute a civil-rights violation if the state provides a meaningful post-deprivation remedy." *Armendariz v. Chief of Police, Odessa Police Dep't*, 478 F. App'x 792, 793 (5th Cir. 2010). Plaintiff has adequate state court remedies for his state based conversion claim and appears to be pursuing same. We decline to exercise supplemental jurisdiction over the state tort claims.

---

[6] Tortious conversion under Louisiana law includes any of the following:

> 1) possession is acquired in an unauthorized manner; 2) the chattel is removed from one place to another with the intent to exercise control over it; 3) possession of the chattel is transferred without authority; 4) possession is withheld from the owner or possessor; 5) the chattel is altered or destroyed; 6) the chattel is used improperly; or 7) ownership is asserted over the chattel.

*Dual Drilling Co. v. Mills Equip. Investments, Inc.*, 721 So. 2d 853, 857 (La. 1998). However, to succeed in a conversion claim the Plaintiff must specifically prove the fault of the Defendant in displacing the property. *Id.* at fn.3.

For the foregoing reasons, **IT IS ORDERED** that the Gretna Defendants' Motion for Summary Judgment (Rec. Doc. No. 30) is **GRANTED**, and Plaintiffs' claims against the Gretna Defendants are **DISMISSED WITH PREDJUDICE**. Plaintiffs maintain all causes of action alleged against the remaining Jefferson Defendants.

New Orleans, Louisiana, this 30th day of July, 2014.

UNITED STATES DISTRICT JUDGE